**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIN J. PAXSON, | No. 25-2436 |
| *Plaintiff - Appellant*, | D.C. No. 2:24-cv-00907-APG-EJY |
| v. | |
| LIVE NATION ENTERTAINMENT, INC.; LIVE NATION WORLDWIDE, INC.; C3 PRESENTS, LLC; FRONT GATE TICKETING SOLUTIONS, LLC, | ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF NEVADA |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted June 23, 2026
San Francisco, California

Filed July 31, 2026

Before: Sidney R. Thomas, Lucy H. Koh, and Holly A.
Thomas, Circuit Judges.

# SUMMARY*

## Certification to Nevada Supreme Court

The panel certified to the Nevada Supreme Court the following question:

> Under Nevada law, is an arbitration clause within an agreement void for lack of consideration where the drafter reserves the unilateral right to modify the entire agreement "at any time" without notice, effective immediately upon posting the modification, and where the unilateral modification authority does not expressly state that modifications do not apply to the arbitration clause or accrued or pending claims?

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# ORDER

KOH, Circuit Judge:

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we respectfully certify the following question to the Supreme Court of Nevada:

> Under Nevada law, is an arbitration clause within an agreement void for lack of consideration where the drafter reserves the unilateral right to modify the entire agreement "at any time" without notice, effective immediately upon posting the modification, and where the unilateral modification authority does not expressly state that modifications do not apply to the arbitration clause or accrued or pending claims?

The answer to this question will likely be "determinative of the cause" pending before this court, and there is "no controlling precedent" in the decisions of the Nevada appellate courts. Nev. R. App. P. 5(a). Moreover, this question "present[s] significant issues," which confirms that certification is appropriate. *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003). Our inquiries under Nevada's state certification rule and our own precedent support certification in this case. We therefore certify the question to the Supreme Court of Nevada and stay further proceedings in our court pending its response.

We do not intend our framing of this question to restrict in any way the Supreme Court of Nevada's consideration of

any issues that it determines are relevant. If the Supreme Court of Nevada decides to consider the certified question, it may of course, in its discretion, reformulate the question. *See French Laundry Partners, LP v. Hartford Fire Ins. Co.*, 58 F.4th 1305, 1307 (9th Cir. 2023) (citing *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999)). We agree to accept and follow the decision of the Supreme Court of Nevada on the certified question.

# I.

We briefly summarize the material facts, which are undisputed. *See* Nev. R. App. P. 5(c)(2). In 2021, Live Nation Entertainment, Inc. ("Live Nation") sold tickets through the website of its subsidiary, Front Gate Ticketing Solutions, LLC ("Front Gate"), for the 2022 Lovers and Friends music festival in Las Vegas, Nevada. On August 2, 2021, Plaintiff-Appellant Erin Paxson, a resident of Ohio, purchased five tickets to the festival through Front Gate's website.

To complete her purchase, Paxson was required to check a box agreeing to the website's "Terms of Sale." Immediately below that checkbox, the webpage stated that "[b]y continuing past this page, you agree to the Terms of Use and Terms of Sale." The Terms of Use (the "Terms") contained the arbitration clause that Defendants-Appellees Live Nation, Live Nation Worldwide, Inc., C3 Presents, LLC, and Front Gate (collectively, "Appellees") later invoked to compel arbitration.[1]

---

[1] This certification order will refer to "Appellees" when discussing the Appellees' arguments, but will refer to "Live Nation" or "Front Gate" individually when discussing each entity's specific actions or rights.

The arbitration clause provided that "[a]ny dispute or claim relating in any way to your use of the Site, or to products or services sold or distributed by us or through us, will be resolved by binding arbitration rather than in court." The clause further provided that it "will survive termination of these Terms" and that the arbitrator "shall have exclusive authority" to resolve disputes concerning the "formation of this Agreement."

> The Terms also contained the modification provision at issue here:

> We may make changes to these Terms at any time. Any changes we make will be effective immediately when we post a revised version of these Terms on the Site. The "Last Updated" date above will tell you when these Terms were last revised. By continuing to use this Site after that date, you agree to the changes.

Paxson alleged that on the first night of the festival, Live Nation employees announced over the venue screens that a security incident was occurring and conveyed that there was an active shooter. Paxson alleged that the announcement caused a stampede that interrupted the performances and that Live Nation declined to offer refunds or credits.

The procedural history is as follows. Paxson filed in Nevada state court a putative class action, asserting claims including breach of contract and unjust enrichment. Appellees removed the action to the United States District Court for the District of Nevada under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), and moved to compel arbitration under the Terms. Paxson opposed. As

relevant on appeal, Paxson argued that the arbitration clause was not enforceable because Front Gate's reservation of an immediate, unilateral right to modify the Terms rendered its promises illusory and left the entire agreement without consideration.

On March 21, 2025, the district court determined that Nevada law governed contract formation and granted the motion to compel arbitration. The district court acknowledged that the only published decision from the District of Nevada to address the question had held a materially similar arbitration provision illusory. *See In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065-66 (D. Nev. 2012). Relying on Nevada's implied covenant of good faith and fair dealing and on two unpublished decisions from the District of Nevada, the district court nevertheless concluded that the Terms were supported by consideration and thus the arbitration clause was enforceable. *See Reno v. W. Cab Co.*, No. 2:18-cv-00840-APG-NJK, 2020 WL 5606897, at *2-3 (D. Nev. Sept. 18, 2020);[2] *Cohn v. Ritz Transp., Inc.*, No. 2:11-cv-1832-JCM-NJK, 2014 WL 1577295, at *2-3 (D. Nev. Apr. 17, 2014). The district court concluded that the implied covenant constrained Front Gate's modification power. The district court also interpreted the Terms to mean that a modification could not apply to accrued or pending claims. Paxson timely appealed.

## II.

When we confront a question that is governed by state law, we "must determine what result [the state] court would

---

[2] Judge Andrew P. Gordon, the district court judge in the instant case, was also the author of *Reno*.

reach based on state appellate court opinions, statutes and treatises." *French Laundry Partners*, 58 F.4th at 1306 (quoting *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021)). Whether certification of the state law question is appropriate involves two inquiries. First, we must determine whether the recipient state's certification rule is satisfied. Under Nevada Rule of Appellate Procedure 5(a), the Supreme Court of Nevada may answer a question of Nevada law "as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court or Court of Appeals of this state" and that "may be determinative of the cause then pending in the certifying court." Nev. R. App. P. 5(a). Second, under this circuit's precedent, we must determine whether it is appropriate to exercise the discretion to certify. Our precedent reserves certification for "state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen*, 325 F.3d at 1037. Our inquiries under Nevada's state certification rule and our own precedent support certification in this case.

## A.

We conclude that Nevada's certification rule is met because there is a determinative question of contract formation under Nevada law that is not clearly answered by controlling precedent from Nevada courts.[3] Nevada law

---

[3] Although Appellees argue that the arbitration clause assigns disputes over the "formation of this Agreement" to the arbitrator, whether an arbitration agreement was ever formed is a question for the court, notwithstanding a delegation clause. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (explaining that "contract-*formation* issues are always matters for judicial resolution").

governs contract formation.[4] The determinative question in this case is whether Front Gate's unilateral modification provision deprived the Terms of the consideration necessary to form a contract. That question turns on two disputes: (1) whether Nevada's implied covenant of good faith and fair dealing supplies the consideration that the modification provision otherwise withholds; and (2) whether Front Gate's modification authority reaches accrued or pending claims or instead operates only prospectively. The Supreme Court of Nevada has not decided either question.

Nevada's existing authority points in different directions. On the one hand, Nevada requires mutuality of obligation and consideration to form a contract. *See Sala & Ruthe Realty, Inc. v. Campbell*, 515 P.2d 394, 396 (Nev. 1973) ("Mutuality of obligation requires that unless both parties to a contract are bound, neither is bound."). Applying that principle, the Supreme Court of Nevada has held agreements unenforceable where one party's obligation to perform was "contingent upon his approval" of items listed in an addendum because such agreements are "supported by neither mutuality of obligation nor consideration." *Serpa v. Darling*, 810 P.2d 778, 781 (Nev. 1991). Moreover, Nevada courts "have long refrained from reforming or 'blue penciling' private parties' contracts" to save them from their drafters' overreach. *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 156 (Nev. 2016) (footnote omitted).

On the other hand, Nevada implies a covenant of good faith and fair dealing in every contract. That covenant "forbids arbitrary, unfair acts by one party that disadvantage the other." *J.A. Jones Constr. Co. v. Lehrer McGovern*

---

[4] The district court held that Nevada law governs contract formation. No party challenges that holding on appeal.

*Bovis, Inc.*, 89 P.3d 1009, 1015 (Nev. 2004) (footnote omitted). The district court in the instant case predicted that the Supreme Court of Nevada would extend this covenant to constrain unilateral modification provisions and that the covenant would supply the consideration that the modification provision otherwise withholds. As Paxson points out, however, the Supreme Court of Nevada has never decided whether the covenant operates at the contract formation stage to save an agreement that would otherwise fail for lack of consideration, or whether instead the covenant may only apply to contracts that are already formed.

Nevada law also leaves unsettled whether Front Gate's modification authority reaches accrued or pending claims. Appellees rely on California decisions that interpret modification clauses that contain no temporal limitation to apply only prospectively and note that Nevada often follows California law. *See, e.g.*, *Peleg v. Neiman Marcus Grp., Inc.*, 140 Cal. Rptr. 3d 38, 67 (Cal. Ct. App. 2012). Thus, Appellees argue that this court should interpret the modification clause to mean that any modification will only apply prospectively, so that the version of the arbitration clause in effect when Paxson purchased her tickets necessarily governs this dispute.

However, the provision here permits changes "at any time," makes "[a]ny changes" "effective immediately" upon posting, and nowhere excludes accrued claims or pending claims. Paxson points out that Nevada courts construe ambiguous contract language against the drafter and the modification clause is at best ambiguous regarding whether modifications apply only prospectively. *See Dickenson v. Nev. Dep't of Wildlife*, 877 P.2d 1059, 1061 (Nev. 1994) (construing ambiguous contract language against the

drafter); *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007) (construing an ambiguous lease provision against the drafter). Thus, Paxson argues that Nevada courts would hold that the modification clause applies to accrued and pending claims.

The Supreme Court of Nevada has not decided whether it would follow the California approach and imply a prospective-only limitation to Front Gate's modification authority or would instead require an express carveout for accrued or pending claims.

Finally, the federal district court decisions applying Nevada law have not agreed as to whether an arbitration clause within an agreement is void for lack of consideration where the drafter reserves the unilateral right to modify the arbitration clause. The only published decision that is directly on point is from the United States District Court for the District of Nevada. *See Zappos*, 893 F. Supp. 2d at 1065. *Zappos* held that an arbitration provision was illusory where the drafter "retain[ed] the unilateral, unrestricted right to terminate the arbitration agreement," especially given that the drafter had "no obligation to receive consent from, or even notify, the other parties to the contract." *Id. Zappos* did not extensively analyze Nevada law and instead observed that "[m]ost federal courts . . . have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable." *Id.* (collecting cases). However, two unpublished decisions, also from the District of Nevada, upon which the district court in the instant case relied, reached the opposite conclusion by applying the implied covenant of good faith and fair dealing. *See Reno*, 2020 WL 5606897, at *2-3; *Cohn*, 2014 WL 1577295, at *2-3.

The answer to the certified question will likely be determinative of this appeal. *See* Nev. R. App. P. 5(a) (requiring that the answer "may be determinative"). Appellees moved to compel arbitration solely under the Terms. If the unilateral modification provision left Front Gate's promise to arbitrate illusory, then no contract was formed, there is no agreement to arbitrate, and we would reverse the district court's order granting the motion to compel arbitration. If Nevada law would instead supply the missing consideration, the Terms may be enforceable, and we would be more likely to affirm.

Although Appellees raise alternative arguments that the arbitration clause may be enforced, these alternative arguments are not persuasive and therefore the certified question is likely determinative. First, Appellees argue that the arbitration clause's survival language cures any contract formation defect. Specifically, the arbitration clause states "[t]his arbitration agreement is intended to be broadly interpreted, and will survive *termination* of these Terms." The survival language in the arbitration clause addresses what will happen after the termination of the Terms but does not state that Front Gate may not modify the arbitration clause or even the survival language itself, which would not terminate the Terms.[5]

Second, Appellees argue that the arbitration clause is severable from the rest of the Terms and therefore must be

---

[5] Termination of a contract is not the same thing as modification of a contract under Nevada law. *See* Nev. Rev. Stat. § 104.2106(3) ("'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach."); *id.* § 104.2209(1) (addressing modification, stating "[a]n agreement modifying a contract within this Article needs no consideration to be binding").

enforced even if another part of the Terms lacks consideration. However, if Front Gate's promise to arbitrate was illusory because it could modify its promise to arbitrate at will, then no agreement to arbitrate was formed, and there is no arbitration agreement that may be severed. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (distinguishing challenges to an arbitration agreement's validity, involving severability, from challenges to whether any arbitration agreement was ever formed).

Third, Appellees argue that any formation issue arising out of the modification clause in the Terms is cured by part performance because Paxson paid for tickets, Front Gate delivered them, and Paxson attended the festival. Appellees forfeited this argument by failing to raise it before the district court, and this panel need not reach it.

**B.**

Certification is also appropriate under this court's precedent. *See Kremen*, 325 F.3d at 1037 (reserving certification for "state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts"). As explained above, the certified question has not yet been resolved by Nevada courts. Moreover, the certified question presents significant issues and has important public policy ramifications because the question is likely to recur. Unilateral modification provisions are a common feature of consumer agreements, and courts across the country have repeatedly confronted their effect on arbitration clauses within the agreements. *See Zappos*, 893 F. Supp. 2d at 1065 (collecting cases). The enforceability of arbitration clauses in such agreements is therefore a matter

of substantial importance to consumers and businesses transacting in Nevada. These considerations reinforce our conclusion that the question is best answered by the Supreme Court of Nevada rather than predicted by this court.

## III.

If the Supreme Court of Nevada accepts review, we designate Plaintiff-Appellant Erin Paxson as the appellant and Appellees as the respondents. *See* Nev. R. App. P. 5(c)(4). If our designation does not accord with the Supreme Court of Nevada's practice, we defer to its designation of the parties. Counsel for Paxson are Joel S. Hengstler, Michael C. Kane, and Bradley J. Myers, The 702 Firm, 8335 W. Flamingo Road, Las Vegas, Nevada 89147. Counsel for Appellees are Eric Y. Kizirian, Eleonora Antonyan, and Alexandra K. Christensen, Lewis Brisbois Bisgaard & Smith LLP, 633 West 5th Street, Suite 4000, Los Angeles, California 90071.

The Clerk of our court is hereby ordered to transmit forthwith to the Supreme Court of Nevada, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record, along with a certificate of service on the parties. *See* Nev. R. App. P. 5(c), (d).

Further proceedings in our court are stayed pending the Supreme Court of Nevada's decision on whether it will accept review, and, if so, receipt of the answer to the certified question. This case is withdrawn from submission until further order of this court. The Clerk is directed to administratively close this docket, pending further order. The panel will resume control and jurisdiction upon receiving an answer to the certified question, or upon the Supreme Court of Nevada's decision to decline it. The

parties shall file a joint report informing this court of the Supreme Court of Nevada's decision regarding whether to accept the certified question within fourteen days after the decision. If the question is accepted, the parties shall file a joint status report every six months thereafter.

**QUESTION     CERTIFIED;     PROCEEDINGS STAYED.**